```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF ALABAMA
                   NORTHERN DIVISION


BEATRICE HARRIS JACKSON,         :
                                 :
    Plaintiff,                   :
                                 :
vs.                              :
                                 :   CIVIL ACTION 12-0548-M
CAROLYN W. COLVIN,               :
Commission of Social Security,¹  :
                                 :
    Defendant.                   :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 13). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 19). Oral argument was waived in this action (Doc. 18). Upon consideration of the administrative record and the memoranda of

---

¹Carolyn W. Colvin became the Commissioner of Social Security on February 14, 2013. Pursuant to Fed.R.Civ.P. 25(d), Colvin is substituted for Michael J. Astrue as Defendant in this action. No further action needs to be taken as a result of this substitution. 42 U.S.C. § 405(g).

1

the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was fifty-four years old, had completed an eleventh-grade education (Tr. 35), and had previous work experience as a tax preparer and machine operator (Tr. 36). In claiming benefits, Plaintiff alleges disability due to osteoarthritis, asthma, hypertension, and chronic obstructive pulmonary disease (Doc. 13 Fact Sheet).

The Plaintiff filed protective applications for disability insurance and SSI on March 23, 2009 (Tr. 125-31; *see also* Tr. 19). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that in spite of her impairments, Jackson was capable of returning to her past

relevant work as a cigar inspector (Tr. 19-26). Plaintiff requested review of the hearing decision (Tr. 14) by the Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Jackson alleges that: (1) The ALJ did not properly consider the opinion of one of the examining physicians; (2) the ALJ improperly found that her testimony of pain and limitation was not credible; and (3) the ALJ failed to consider her poverty as a reason for non-treatment (Doc. 13). Defendant has responded to—and denies—these claims (Doc. 14). The relevant evidence of record follows.

On January 25, 2008, Plaintiff underwent a CT of the brain that was normal (Tr. 241-42).

On January 28, 2008, records from Davis Family Medicine show that Jackson's acute sinusitis headache from three days earlier was resolving (Tr. 251; *see generally* Tr. 243-73). On April 7, she was treated for acute sinusitis and hypertension, receiving several prescriptions, including one for Keflex[2] (Tr. 250). On May 19, Plaintiff had a tension headache for which she

---

[2]**Error! Main Document Only.***Keflex* is used for the treatment of various infections. *Physician's Desk Reference* 854-56 (52nd ed. 1998).

3

was given a shot of Toradol[3] (Tr. 249).  A week later, she was seen for joint pain and stiffness; the assessment was osteoarthritis, asthma, and hypertension (Tr. 248).  On October 17, 2008, Jackson had sinus congestion and some chronic pain and stiffness (Tr. 247); on December 12, she was treated for acute sinusitis and asthma (Tr. 246).  In all of these visits to Davis Family Medicine, Plaintiff's lungs were clear.

On June 26, 2009, Jackson was examined by Dr. Jamil Akhtar for complaints of pain in both knees; the doctor noted a normal examination, though she did have hypertension (Tr. 278-80; *see generally* Tr. 276-80).  On July 8, Plaintiff was wheezing and complaining of shortness of breath for which she was using the nebulizer; Albuteral[4] and Advair were prescribed (Tr. 277).

Records dated September 8, 2009 from Vaughan Regional Medical Center show that Jackson was having problems with her asthma; testing demonstrated signs of fatigue (Tr. 285-95, 297-302, 318-23; *see generally* Tr. 281-302).

On May 20, 2010, Dr. Robert M. Combs examined Plaintiff who was characterized as well-developed, slightly overweight, and in no acute distress (Tr. 304-11).  He noted her lungs had no

---

[3]*Toradol* is prescribed for short term (five days or less) management of moderately severe acute pain that requires analgesia at the opioid level. *Physician's Desk Reference* 2507-10 (52nd ed. 1998).

[4]**Error! Main Document Only.***Albuterol* is the generic name for an inhalation aerosol used to prevent and relieve "bronchospasm in patients with reversible obstructive airway disease, and for the prevention of exercise-induced bronchospasm." *Physician's Desk Reference* 2656 (52nd ed. 1998).

4

wheezes, rales, or rhonchi; she had good breath sounds at the bases, well augmented on deep inspiration.  Combs noted full range of motion of joints in the extremities with no limitation; her blood pressure was 140/78.  The doctor's impression was that she had no limitation of daily activities and "no significant limitation in doing work-related activity such as sitting, standing, walking or lifting or carrying or handling objects" (Tr. 304).  Dr. Combs completed a medical source statement in which he indicated that Jackson was capable of lifting and carrying up to ten pounds frequently and twenty pounds occasionally, but never more than twenty pounds; he thought that Plaintiff could stand and walk, each, for two hours and sit for eight hours at a time and do all three for eight hours during a normal workday.  The doctor indicated that Jackson was capable of using her hands for reaching overhead frequently, but reaching (in general), handling, fingering, feeling, and pushing and pulling movements continually; she could use foot controls frequently.  Combs said that Plaintiff could climb, balance, stoop, kneel, crouch, and crawl only occasionally.

    On May 20, 2010, Plaintiff underwent pulmonary function testing, giving good effort (Tr. 313-16).  No bronchodilator was given.

    On June 1, 2010, Dr. Glenton Davis diagnosed Plaintiff to be suffering from otitis media and sinusitis for which she was

5

prescribed Amoxil[5] and Phenergan[6] (Tr. 325).

On June 7, 2010, Dr. Osasere Aghedo examined Jackson who was in no acute distress (Tr. 327-31). He noted that the tympanic membranes in both ears appeared to be fluid-filled; his diagnosis was acute serious otitis media, eusatachian tube dysfunction, hearing loss, nasal septal deviation, and allergic rhinitis.

At the hearing, Plaintiff testified that in her past work as a cigar inspector, she checked the tobacco and weighed the cigars on a daily basis; she would have to lift up to twenty-five pounds fairly frequently (Tr. 35-44). Jackson had problems with arthritis, knee pain, and breathing problems; using the inhaler to help her breathe made her sleepy. Arthritis affected her hands, knees, and toes, making her ache all over. Plaintiff regularly had problems with ear infections and sinusitis; she has also had problems with mitral valve prolapse, though she had not had any problems in more than eight months. Jackson stated that she could only walk about fifteen steps on a bad day; she has five-to-six bad days a week. Plaintiff testified that she does not get out much, going to church only twice a month. Her hypertension medication made her sleepy, requiring that she lie

---

[5]**Error! Main Document Only.***Amoxil* is an antibiotic used for the treatment of infection. *Physician's Desk Reference* 2792-93 (52nd ed. 1998).

[6]**Error! Main Document Only.***Phenergan* is used as a light sedative. *Physician's Desk Reference* 3100-01 (52nd ed. 1998).

down. The pain in Jackson's legs, arms, and hands measured ten on a ten-point scale, though after taking Lyrica,[7] it dropped to an eight or nine; her doctor provided the medicine as she could not afford it. Plaintiff slept only about three hours a night because she woke up with pain or unable to breathe.

Dr. Michael McClanahan, a vocational expert, testified concerning Plaintiff's past previous work (Tr. 44-46). When questioned by the ALJ about a hypothetical person with Jackson's vocational background who could "perform a range of light unskilled work with no work at unprotected heights, no work with hazardous machinery, [and] no concentrated exposure to respiratory irritants," McClanahan stated that the person would be able to do Jackson's past work as a cigar inspector (Tr. 45).

In his decision, the ALJ summarized the evidence of record and determined that Jackson was capable of performing light work (Tr. 19-26). He went on to conclude that she was capable of returning to her past relevant work as a cigar inspector. This concludes the relevant evidence.

In bringing this action, Jackson first claims that the ALJ did not properly consider the opinion of one of the examining physicians. She specifically references Dr. Robert Combs (Doc. 13, pp. 11-13). It should be noted that "although the opinion

---

[7]*Lyrica* is used for the management of neuropathic pain. **Error! Main Document Only.***Physician's Desk Reference* 2517 (62nd ed. 2008).

7

of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[8] *see also* 20 C.F.R. § 404.1527 (2012).

In evaluating the evidence, the ALJ noted that no treating physician had provided sufficient evidence to assess Jackson's residual functional capacity for light work (Tr. 25). Nevertheless, the ALJ found that Dr. Combs was a specialist and that his opinions were consistent with the evidence as a whole; for those reasons, the ALJ gave significant weight to Dr. Combs' opinions (Tr. 25).

Jackson's specific complaint is that the ALJ did not adopt all of Dr. Combs' conclusions about her abilities. Plaintiff argues that the ALJ's opinion cannot be accepted because he did not include in his hypothetical Combs' opinions about all of her particular abilities. More specifically, Dr. Combs had found that Jackson was capable of the following: using her hands for reaching overhead on a frequent basis; reaching (in general), handling, fingering, feeling, and pushing and pulling movements

---

[8]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

on a continual basis; and climb, balance, stoop, kneel, crouch, and crawl only occasionally (Doc. 13, p. 13; *cf.* Tr. 308-09).

The Court is not aware of any law or regulation that requires the ALJ to ask a vocational expert whether every particular action found by a physician, whose opinion is being relied on by the ALJ, can be performed by a claimant at a specific job.  Plaintiff has not argued that any of the "limitations" found by Dr. Combs would affect her ability to do the job of cigar inspector and the Court notes that Jackson's job, as she described it, did not require her to climb, stoop, kneel, or crawl; although she had to handle and reach, Dr. Combs found that she could perform these motions on a continual basis (Tr. 179-80; *cf.* Tr. 308).  The Court finds no merit in this claim.

Plaintiff next claims that the ALJ improperly found that her testimony of pain and limitation was not credible.  More specifically, Jackson asserts that the ALJ failed to explain why he rejected her testimony (Doc. 13, pp. 5-11).  The standard by which the Plaintiff's complaints of pain are to be evaluated requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged

9

pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). The Eleventh Circuit Court of Appeals has also held that the determination of whether objective medical impairments could reasonably be expected to produce the pain was a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence." *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir.), *vacated for rehearing en banc*, 774 F.2d 428 (1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Furthermore, the Social Security regulations specifically state the following:

> statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. 404.1529(a) (2012).

In his decision, the ALJ noted that Jackson had "little, if any, follow-up treatment" for her asthma and chronic obstructive

10

pulmonary disease; he went on to note that there were no emergency room or hospital visits for these severe impairments (Tr. 24). He went on to note that in the only test of record, she performed the PFT test without a bronchodilator and that her treating physician noted that her lungs were clear (Tr. 24-25). The ALJ found that there was no evidence that her otitis media, allergies, hypertension, and osteoarthritis would keep her from working (Tr. 25). Noting that Plaintiff had admitted that she left her job as a cigar inspector because the plant closed, the ALJ found that there was no evidence of significant deterioration in her health since working at that job (Tr. 25; *cf.* Tr. 37). Finally, the ALJ noted that Dr. Combs' opinions of Jackson's abilities would not preclude her from working (Tr. 25). The Court finds that these are all valid reasons, supported by the evidence, to have rejected Plaintiff's testimony of her pain and limitations. Jackson's claim otherwise is without merit.

Plaintiff's final claim is that the ALJ failed to consider her poverty as a reason for non-treatment (Doc. 13, pp. 13-15). It is noted that the Eleventh Circuit Court of Appeals has held that poverty excuses noncompliance with medical treatment. *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988).

Jackson has pointed to two instances in the record where there is some indication of a lack of finances. Specifically,

she told Dr. Combs that she had taken Lyrica for pain but had had to switch doctors because of finances, so the Lyrica was no longer prescribed (Tr. 304). She also testified at the evidentiary hearing that she could not afford to purchase the Lyrica (Tr. 43).

The Court notes that these are the only two references in the entire record regarding Jackson's finances and they relate to the same circumstance: an inability to purchase one medication. There is no other record evidence of Plaintiff failing to receive treatment because of an inability to pay; Jackson has not argued otherwise. This claim is of no merit.

Plaintiff has raised three different claims in bringing this action. All are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**. Judgment will be entered by separate Order.

DONE this 18th day of April, 2013.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE